UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MATTHEW SPECK, | : | |
| Plaintiff, | : | CASE NO. 3:15-cv-617 (VAB) |
| | : | |
| v. | : | |
| | : | |
| WARDEN SANTIAGO, et al., | : | |
| Defendants. | : | MAY 20, 2015 |
| | : | |

**INITIAL REVIEW ORDER**

Plaintiff, Matthew Speck, currently incarcerated at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. § 1983. The Complaint was received by the Court on April 27, 2015, and Mr. Speck's motion to proceed *in forma pauperis* was granted on May 12, 2015. Order, ECF No. 7. The Defendants are Warden Santiago, Counselor King, Counselor Illvento, Director of Security Whidden and Deputy Warden Zegerzuski. All Defendants are named in their individual capacities only. Compl. at Parties ¶ 3, ECF No. 1.

Under section 1915A of title 28 of the United States Code, the Court must review civil complaints filed by prisoners seeking "redress from a governmental entity," officer or employee and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Mr. Speck alleges that he subscribes to a number of magazines. Under the Connecticut Department of Correction media review policy contained in Department of Correction Administrative Directives 10.7, Section 4(N), and 9.6, Section 12, correctional officials review all publications received by inmates and must notify them when a publication is rejected.[1] The notice must reference specific articles considered objectionable. Inmates are afforded fifteen days from receipt of a rejection notice to file an appeal. Inmates may submit only one appeal for any rejected item.

Mr. Speck alleges that he received a publication rejection notice in December 2014. Compl. at Stmt. of Facts ¶ 14, ECF No. 1. The rejected item was the December 4, 2014 issue of

---

[1] "The Administrative Directives are written guidelines, promulgated pursuant to Connecticut General Statutes § 18 81, that establish the parameters of operation for Connecticut correctional facilities." *Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7, n.2 (D. Conn. Sept. 19, 2003) (citation omitted) (taking judicial notice of Connecticut Administrative Directive 9.6). The Court can take judicial notice of the State of Connecticut Administrative Directives that are found on the Department of Correction's website at: http://www.ct.gov/doc/taxonomy/ct_taxonomy.asp?DLN=40573. *Id; see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (holding it was proper for trial court to take judicial notice of state prison regulations).

Rolling Stone magazine.  *Id.* ¶15.  Mr. Speck alleges that, in the rejection notice, Defendant Santiago indicated that the entire issue was objectionable for "depicting, describing and encouraging activity which may lead to the use of physical violence or group disruption."  *Id.* ¶¶ 18, 30-31. He filed an appeal.  *Id.* ¶ 19.  Mr. Speck alleges that Director Whidden granted the appeal in part, indicating that four pages should be removed because they encouraged or instructed persons to commit criminal activity.  *Id.* ¶¶20, 25-28. Specifically, he alleges that Director Whidden noted that these pages contained sexually explicit materials and showed rap artists displaying gang hand signs and tattoos.

Following the appeal, Mr. Speck alleges that Defendant Santiago issued a second rejection notice against the same issue of Rolling Stone, identifying these four pages as containing objectionable content because they "encourage or instruct the commission of criminal activity."  *Id.* ¶¶ 21, 23-24. Mr. Speck alleges that he submitted an appeal of the second rejection notice to address the specific concerns originally identified by Director Whidden.  *Id.* ¶32.  He contends that Counselor King rejected the appeal because Administrative Directive 9.6 provides that all decisions of the Director of Security, in this case Defendant Whidden, are final dispositions not subject to further appeal.  *Id.* ¶¶ 34-37.

In January 2015, Mr. Speck alleges that he received a publication rejection notice issued by Defendant Santiago regarding the January 2015 issue of Popular Science magazine.  *Id.* ¶¶ 40-41, 44.  He contends that the notice indicated that two pages had been rejected as depicting or describing the production of alcoholic beverages or the manufacturing of drugs.  *Id.* ¶¶42-43.  Mr. Speck appealed the rejection.  *Id.* ¶45.  He alleges that Defendant Whidden upheld the rejection of one page as describing the production of alcohol and the second page as containing

instructions on creating graphite paint.  *Id.* ¶¶ 46-49.  He further alleges that the rejection notice did not reference graphite paint.  *Id.* ¶50.  Mr. Speck pleads that Warden Santiago did not allow him to file a second appeal to address this new reason for rejection of the publication.  *Id.* ¶¶ 53, 55.

Mr. Speck alleges that he filed an administrative grievance in an attempt to have prison officials revise the directive.  *Id.* ¶¶ 56, 62.  He also alleges that Counselor King offered to allow him an opportunity to file a second appeal of the rejection of Popular Science if he withdrew the grievance.  *Id.* ¶¶ 59-61.  Mr. Speck declined the offer, and Warden Santiago allegedly rejected the grievance.  *Id.* ¶¶ 62, 64.

While the grievance appeal was pending, Mr. Speck alleges that he received another publication rejection notice issued by Defendant Santiago.  *Id.* ¶ 66.  Mr. Speck alleges that the notice indicated that an entire publication was rejected as containing sexually explicit material.  *Id.* ¶¶ 68-69.  Mr. Speck appealed the rejection on the ground that the explanation was insufficient for him to adequately challenge the rejection.  *Id.* ¶70.  Mr. Speck alleges that Director Whidden denied the appeal because, even though the intent of the authors was to promote sexual health, it contained drawings depicting sexual intercourse.  *Id.* ¶¶71-73.

Mr. Speck alleges that he received rejection notices for parts of the March 2015 issues of Popular Science and Wired magazines.  *Id.* ¶ 75.  He also alleges that neither notice included any reason for the rejection.  *Id.* ¶ 76.  He alleges that Director Whidden granted the appeal with regard to the March 2015 issue of Popular Science, because the rejected content did not threaten safety and security.  *Id.* ¶ 80.  Mr. Speck alleges that he filed a grievance against Warden Santiago for failure to include reasons in rejection notices.  *Id.* ¶ 81.  He alleges that Counselor

King again offered to permit him to file a second appeal if he withdrew the grievance. *Id.* ¶ 82. Mr. Speck declined. *Id.* ¶ 83. He contends that the grievance decision, which was "compromised," was issued by Warden Santiago. *Id.* ¶¶ 84-85. Mr. Speck alleges that he then filed another grievance against Warden Santiago for retaliation. *Id.* ¶ 87. Again, he contends that Defendants Illvento and King asked Mr. Speck to withdraw his grievance, which he refused to do. *Id.* ¶¶ 90, 93. He alleges that Deputy Warden Zegerzuski instructed Counselors King and Illvento not to process the grievances against Warden Santiago. *Id.* ¶ 91.

Mr. Speck specified his legal claims in eleven counts: (1) denial of due process by failure to implement proper standards in the media review and administrative remedy policies; (2) retaliation for exercising protected speech and seeking redress of his grievances; (3) failure to follow the policies and customs set forth in the administrative directives and state regulations by identifying reasons for rejection of publications after the appeal was filed; (4) the Defendants' refusal to permit second appeals to address later identified reasons for rejection of publications, in violation of the Connecticut Department of Correction's policies and customs; (5) denial of due process by Warden Santiago when he responded personally to grievances filed against him; (6) retaliation by Warden Santiago against Mr. Speck by failing to provide reasons for publication rejection thereby preventing Mr. Speck from challenging the rejections; (7) a "failure to act" by Director Whidden who did nothing in response to Warden Santiago's failure to provide reasons for rejection of publications; (8) a violation of due process by Director Whidden by creating additional reasons for rejection after the appeal was filed; (9) violation of due process by all Defendants in failing to provide reasons for rejecting publications as required by the directive; (10) failure to comply with state regulations on the part of all Defendants; and (11) a

violation of due process by Deputy Warden Zegerzuski by withholding the grievances against Warden Santiago and not allowing Mr. Speck to file administrative remedies against all Defendants.  In one portion of his Complaint, Mr. Speck also refers to "state constitutional tort" and common law tort claims.  Compl. at Jurisdiction ¶ 2, ECF No. 1.

Mr. Speck specifically states in two places in his complaint that he has named the Defendants only in their individual capacities.  Compl. at Caption, ECF No. 1; Compl. at Parties ¶ 3.  In his prayer for relief, however, he seeks, in addition to damages, injunctive relief that the directive be revised to allow second appeals in certain circumstances.  "'[I]njunctive relief against a state official may be recovered only in an official capacity suit' because '[a] victory in a personal-capacity action is a victory against the individual defendant rather than against the entity that employs him.'"  *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 80 (D. Conn. 1998) (quoting *Hill v. Shelander*, 924 F. 2d 1370, 1374 (7th Cir. 1999) and *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985)).  As the Court cannot provide the requested injunctive relief against any of the Defendants in their individual capacities, Mr. Speck's request for injunctive relief is dismissed under 28 U.S.C. § 1915A(b)(1).

In counts three, nine, and ten, Mr. Speck contends that his right to due process was violated by the Defendants' failure to comply with prison directives or state regulations.  To plead a due process claim under the Fourteenth Amendment, Mr. Speck must allege that he has "been deprived of a protected liberty interest."  *Rhodes v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007) (citation and internal quotation marks omitted).  The failure to comply with state-created procedures does not create such a protected liberty interest.  *See Rhodes*, 2007 WL 1343649, at *2 (holding that due process is not violated by failure to

comply with institutional administrative procedures); *see also Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."), *overruled in part on other grounds by, Thompson v. Keohane*, 516 U.S. 99, 111 (1995). All federal claims in counts three, nine and ten, therefore, are dismissed under 28 U.S.C. § 1915A(b)(1).

In count eleven, Mr. Speck alleges that Deputy Warden Zegerzuski violated due process by withholding the grievances against Warden Santiago, thereby not allowing him to obtain redress. Counselors King and Illvento are not named specifically in any count, but the Complaint's only allegations against them concern interference with Mr. Speck's grievances. Thus, count eleven is applicable to them as well.

The Supreme Court has never held that state prisons are constitutionally required to have formal grievance procedures. Denial of access to prison grievance procedures, therefore, does not rise to the level of a constitutional violation cognizable under section 1983. *See Lopez .v. McGill*, 3:08-CV-1931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009); *see also Rickett v. Orsino*, NO. 10 Civ. 5152(CS)(PED), 2013 WL 1176059, at *20 (S.D.N.Y. Feb. 20, 2013) (holding that stand-alone claim for interference with access to institutional grievance procedures is not cognizable under section 1983) . Nor is there a constitutionally protected right to have prison officials comply with grievance procedures. *See Kalican v. Dzurenda*, No. 3:12-cv-1009(SRU), 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015). All of Mr. Speck's federal claims against Defendants Zegerzuski, King and Illvento concern access to or interference with institutional grievance procedures. Because these claims are not cognizable under section 1983,

they are dismissed under 28 U.S.C. § 1915A(b)(1).

The case will proceed on the remaining federal claims, namely, the due process claims against Defendants Santiago and Whidden in counts one, four, five and eight, the supervisory liability claim against Defendant Whidden, in count seven, and the retaliation claims against Defendant Santiago in counts two and six, as well as the pendant state constitutional law claims against all Defendants.  Because the Plaintiff fails to state the torts that he believes are implicated by the conduct alleged in his Complaint, and the Court cannot discern what tort claims Plaintiff could possibly have, his state law tort claims are dismissed.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)   The request for injunctive relief, all the federal law claims against Defendants Zegerzuski, King and Illvento, and the federal law claims against Defendants Whidden and Santiago in counts three, nine and ten are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

(2)   **The Clerk shall** verify the current work address of each Defendant with the Department of Correction Office of Legal Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order.  The Clerk shall report to the Court on the status of that waiver request on the thirty-fifth (35) day after mailing.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his individual capacity and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the Plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The Plaintiff must give notice of a new address even if he is incarcerated.  The Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the Plaintiff has more than one pending case, he should indicate all of the case

numbers in the notification of change of address. The Plaintiff should also notify the Defendant or the attorney for the Defendant of his new address.

      **SO ORDERED** at Bridgeport, Connecticut, this 20th day of May 2015.

                                  /s/ Victor A. Bolden
                                  Victor A. Bolden
                                  United States District Judge